MICHAEL R. MATTHIAS, Bar No. 57728
BAKER & HOSTETLER LLP
12100 Wilshire Boulevard, 15th Floor
Los Angeles, California 90025-7120
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: mmatthias@bakerlaw.com

ATTORNEYS FOR DEFENDANT
WÄRTSILÄ NORTH AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| KOFFLER ELECTRICAL MECHANICAL APPARATUS REPAIR, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WÄRTSILÄ NORTH AMERICA, INC.,<br><br>Defendant. | Case No. 3:11-cv-00052 EMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY OF ACTION; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Michael R. Matthias; [Proposed] Order]<br><br>Hearing Date: March 9, 2011<br>Time: 10:30 A.M.<br>Courtroom: C, 15th Floor |

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO COMPEL ARBITRATION AND FOR STAY OF ACTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on March 9, 2011, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C, 15th Floor, of the above entitled court located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Hon. Edward M. Chen, Defendant Wärtsilä North America, Inc. ("Wärtsilä") shall and hereby does move the Court, pursuant to the Federal Arbitration Act, for an order compelling Plaintiff Koffler Electrical Mechanical Apparatus Repair ("KEMAR") to arbitrate its claims against Wärtsilä in accordance with the Terms and Conditions of the parties' agreement and staying this action to allow the arbitration to proceed.

503221084

The issue to be decided is whether KEMAR is bound by its agreement to arbitrate the claims asserted in KEMAR's Complaint, and if so, whether this case should be stayed while the arbitration is determined.

Respectfully submitted,

Dated: January 27, 2011

BAKER & HOSTETLER, LLP
MICHAEL R. MATTHIAS

s/Michael R. Matthias
Michael R. Matthias
Attorneys for Defendant
WÄRTSILÄ NORTH AMERICA

## POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff KEMAR seeks to litigate claims it agreed to arbitrate. In its Complaint, KEMAR alleges that Wärtsilä has refused to pay KEMAR for repairs made to an AVK 10,550 AVK electric generator ("Generator"). Those repairs were performed pursuant to a Purchase Order issued by Wärtsilä and accepted by KEMAR. The Purchase Order expressly incorporates Wärtsilä's 2007 Terms and Conditions in capitalized letters:

> ALL SUPPLIES OF GOODS AND/OR SERVICES ARE SUBJECT TO THE WÄRTSILÄ NORTH AMERICA, INC. GENERAL TERMS AND CONDITIONS USA – PURCHASE ORDERS (2007). THE COMPANY WILL SUPPLY COPIES OF THE GENERAL TERMS AND CONDITIONS UPON REQUEST.

Item 17 of the Terms and Conditions contains a broadly worded arbitration agreement that covers all of KEMAR's claims:

> 17. DISPUTES. All claims, disputes and any other matters in question between Buyer and Seller arising out of or relating to this Purchase Order or the breach thereof shall be referred to arbitration for resolution in accordance with the applicable rules of the American Arbitration Association. The situs of any such proceeding shall be Houston, Texas; Seller shall proceed with the work and maintain its progress during any dispute or arbitration. Nothing contained in this Purchase Order shall preclude Buyer from bringing any legal suit, action or other enforcement proceeding against the Seller in the courts of any jurisdiction where the Seller or any of its property or assets may be found or located; pursuant to and to the extent permitted by the local laws of such jurisdiction, the Seller hereby irrevocably submits to the jurisdiction of any such court.

The plain language of the referenced Terms and Conditions covers all claims relating to KEMAR's transaction with Wärtsilä. As a result, the Court should order the parties to arbitrate the claims presented in KEMAR's Complaint and should stay this case until such arbitration is determined.

## SUMMARY OF THE ARGUMENT

This dispute should be referred to arbitration pursuant to the agreement of the parties. In March 2009, Wärtsilä sent a Purchase Order[1] ("Purchase Order") to Koffler Electrical Mechanical Apparatus Repair, Inc. ("KEMAR"). The Purchase Order incorporates Wärtsilä's 2007 Terms

---

[1] A true and correct copy of the Purchase Order is attached as Exhibit A to the Declaration of Michael R. Matthias in Support of Motion to Compel Arbitration filed contemporaneously herewith ("Matthias Declaration").

503221084

and Conditions[2] ("Terms and Conditions"). The Terms and Conditions require that all claims arising out of or related to the Purchase Order shall be referred to arbitration for resolution. On December 15, 2010, Wärtsilä initiated arbitration of the dispute between the parties by filing its Statement of Claim, captioned Case No. 50 118 T 00799 10, with the American Arbitration Association ("AAA").[3] After Wärtsilä initiated the arbitration pursuant to the agreed-to Terms and Conditions, KEMAR refused to participate in the arbitration. Instead, KEMAR filed this suit, and seeks damages related to its performance of services arising out of and relating to the Purchase Order.

Under the foregoing facts, this Court must decide (a) whether there was an agreement to arbitrate; and (b) whether the scope of that agreement to arbitrate encompasses the claims at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). If a party seeking arbitration establishes these two factors, the Court must compel arbitration. 9 U.S.C. § 4; *Chiron*, 207 F.3d at 1130. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008).

## BACKGROUND

Wärtsilä was hired by its customer, Barrick Goldstrike Mines, Inc. Western 102 Power Plant ("Barrick"), to supply Barrick with an AVK 10,550 AVK electric Generator ("Generator"). Wärtsilä acquired the Generator, and in or about November 2008, Wärtsilä communicated with KEMAR to arrange for testing and repair of the Generator. KEMAR inspected the Generator and provided a turnkey offer. Based on KEMAR's offer, and upon request by KEMAR[4], Wärtsilä issued its Purchase Order to KEMAR in March 2009. *See* Exhibit A. The Purchase Order contains the following language in all capital letters:

---

[2] A true and correct copy of Wärtsilä's Terms and Conditions are attached as Exhibit B to the Matthias Declaration.
[3] A true and correct copy of Wärtsilä's Statement of Claim is attached as Exhibit C to the Matthias Declaration.
[4] A true and correct copy of email correspondence between Reggio Frey at Wärtsilä and Wayne Kelder at KEMAR is attached as Exhibit D to the Matthias Declaration.

503221084

2

> ALL SUPPLIES OF GOODS AND/OR SERVICES ARE SUBJECT TO THE WÄRTSILÄ NORTH AMERICA, INC. GENERAL TERMS AND CONDITIONS USA – PURCHASE ORDERS (2007). THE COMPANY WILL SUPPLY COPIES OF THE GENERAL TERMS AND CONDITIONS UPON REQUEST.

*Id.* The Terms and Conditions contain the following dispute resolution provision requiring the parties to arbitrate all claims and disputes:

> 17. DISPUTES All claims disputes and any other matters in question between Buyer and Seller arising out of or relating to this Purchase Order or the breach thereof shall be referred to arbitration for resolution in accordance with the applicable rules of the American Arbitration Association. The situs of any such proceeding shall be Houston, Texas; Seller shall proceed with the work and maintain its progress during any dispute or arbitration. Nothing contained in this Purchase Order shall preclude Buyer from bringing any legal suit, action or other enforcement proceeding against the Seller in the courts of any jurisdiction where the Seller or any of its property or assets may be found or located; pursuant to and to the extent permitted by the local laws of such jurisdiction, the Seller hereby irrevocably submits to the jurisdiction of any such court.

Exhibit B at page 4. The day after the Purchase Order referencing the Terms and Conditions containing the arbitration provision was sent to it, KEMAR acknowledged receipt of the Purchase Order.[5]

After the repair and testing of the Generator, Wärtsilä concluded that KEMAR made incorrect tests and reached incorrect conclusions, resulting in KEMAR's failure to detect early on a defective stator core in the Generator and also resulting in KEMAR allegedly incurring increased and unnecessary costs. Eventually, with the Wärtsilä-arranged Original Equipment Manufacturer authorized representative in attendance, the stator core was identified as defective. It was then rebuilt and tested by KEMAR and, upon information and belief, as of November 4, 2010, the repairs of the Generator were satisfactorily completed. At no time did Wärtsilä approve a change order to, or modification of, the Purchase Order.

KEMAR has ignored its fault in failing to detect the defective stator core. It has refused to ship the Generator to Wärtsilä's customer, Barrick, in accordance with the requirements of the Purchase Order unless Wärtsilä pays KEMAR additional monies, apparently to cover increased costs that KEMAR incurred due to its own fault. But Wärtsilä satisfied its contractual obligations

---

[5] A true and correct copy of email correspondence between Reggio Frey at Wärtsilä and Wayne Kelder at KEMAR is attached as Exhibit E to the Matthias Declaration.

503221084          3

to KEMAR. It has already paid KEMAR in full in accordance with the price stated in the Purchase Order. It is KEMAR—not Wärtsilä—that is responsible for KEMAR's failure to timely detect the defective stator core. Wärtsilä has requested on several occasions that KEMAR ship the Generator in accordance with its contractual obligations, but KEMAR has refused to release and ship the Generator, and improperly holds it as security for KEMAR's cost overruns.

On December 15, 2010, pursuant to the Terms and Conditions incorporated by reference in the Purchase Order, Wärtsilä filed its Statement of Claim with the AAA in Dallas, Texas, to initiate an arbitration proceeding in Houston, Texas. In a letter to the AAA dated January 4, 2011, KEMAR refused to submit to arbitration. The following day, on January 5, 2011, KEMAR filed its Complaint against Wärtsilä in the United States District Court for the Northern District of California.

## ARGUMENT AND ANALYSIS

### I. AN AGREEMENT TO ARBITRATE EXISTS BETWEEN KEMAR AND WÄRTSILÄ

Federal law mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the avoidance of any contract." 9 U.S.C. § 2. In deciding whether a dispute is arbitrable, a court must answer two questions: (1) whether the parties agreed to arbitrate, and, if so (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; *Chiron*, 207 F.3d at 1130.

Any doubt concerning arbitrability under the Federal Arbitration Act ("FAA") should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself, or an allegation of waiver, delay, or other similar defense to arbitrability. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756-757 (9th Cir. 1988). As shown below, the parties' agreement to arbitrate is binding, and KEMAR's claims fall within the arbitration clause's broad scope.

### A.     New York Law Governs The Agreement

While federal arbitration law governs the dispute between the parties, state contract law governs whether an agreement to arbitrate is valid. *See Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Moreover, the FAA requires that "private arbitration agreements [be] enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Tr.*, 489 U.S. 468, 479 (1989). Therefore, questions of state contract law must be decided under the law of the state selected by the parties' agreement. *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004).

KEMAR and Wärtsilä agreed that New York law should govern the agreement to arbitrate. *See* Exhibit B. The Terms and Conditions referenced in Wärtsilä's Purchase Order contain an unequivocal choice-of-law provision: "CHOICE OF LAW: This Purchase Order and the contract based thereon shall be determined and interpreted in accordance with the laws of the State of New York excluding any choice of law rule which may direct the application of the laws of another state." As such, New York law governs the agreement.

### B.     Wärtsilä's Purchase Order Incorporates Terms And Conditions Calling For Arbitration Of Disputes

Wärtsilä moves this Court for an order compelling arbitration under the FAA, based on the agreed-to mandatory arbitration provision in Wärtsilä's Terms and Conditions. That clause provides that "[a]ll claims, disputes and any other matters in question between Buyer and Seller . . . shall be referred to arbitration for resolution . . ." Therefore, KEMAR is bound to arbitrate its claims against Wärtsilä because KEMAR's claims arise out of and are connected to the Purchase Order at issue in this dispute.

KEMAR acknowledges receipt of Wärtsilä's Purchase Order dated March 16, 2009. See Plaintiff's Complaint at paragraph 9, Doc 1; *see also* Exhibit D where KEMAR requests that when the Purchase Order is issued, Wärtsilä send the Purchase Order to KEMAR; *see also* Exhibit E. KEMAR does not dispute that there are Terms and Conditions referenced in the Purchase Order, or that those Terms and Conditions were available on request. Plaintiff's Complaint at paragraph 9. KEMAR also does not dispute that the Terms and Conditions contain an agreement to arbitrate. *Id.* at paragraph 10. Instead, KEMAR resists arbitration solely on a

503221084
5

1  theory that the Terms and Conditions incorporated by reference in the Purchase Order were
2  "never discussed or forwarded to KEMAR prior to the work being completed." Plaintiff's
3  Complaint at paragraphs 9 and 10. Applicable legal authority dictates, however, that the Terms
4  and Conditions - including the arbitration clause - were properly incorporated by reference and
5  are binding on KEMAR.

6  As stated above, New York law governs this dispute. Under New York law, an arbitration
7  clause incorporated by reference is enforceable where clear reference is made to it, and it is
8  described in such terms that its identity may be ascertained beyond doubt. *See Level Export
9  Corp. v. Wlz, Aiken & Co.*, 305 N.Y. 82, 87 (1953) (holding that buyer is bound by standard terms
10 incorporated by reference into executed agreement, although it had never seen or received a copy
11 of those terms and was unaware of any arbitration provision); accord *Baldeo v. Darden
12 Restaurants, Inc.*, 2005 WL 44703, *4 (E.D.N.Y. Jan. 11, 2005) (granting motion to compel
13 arbitration of employee-related claims, where disputed resolution brochure incorporated reference
14 to a more comprehensive handbook, containing an arbitration provision and applying FAA and
15 New York law); *see also Liberty Mgt. & Constr. Ltd. V. Fifth Ave. & Sixty-Sixth St. Corp.*, 208
16 A.D.2d, 77-78 (1st Dept. 1995) (finding that an arbitration clause in a "General Conditions"
17 document, which was incorporated by reference into the contract, was enforceable against the
18 contractor).

19 The same result obtains under California law: whether a party is bound by an arbitration
20 clause hinges directly on whether that clause is sufficiently incorporated by reference.
21 Incorporation by reference requires that (1) the reference to another document is clear and
22 unequivocal; (2) the reference is called to the attention of the other party; and (3) the terms of the
23 incorporated documents are known or easily available to the contracting parties. *See Wolschlager
24 v. Fidelity Nat'l Title Ins.*, 111 Cal.App.4th 784, 791 (App. 6th Dist. 2003) (holding that an
25 arbitration agreement was properly incorporated by reference in a preliminary report where the
26 policy was identified by name and directed the plaintiff to where it could be inspected); *Maersk-
27 Sealand v. Euocargo Express, LLC*, No. CV 02-3230 MLG, 2004 WL 1950372, *6 (C.D. Cal.
28 April 8, 2004) (holding that a service agreement that clearly identified by title each document it

503221084

6

purported to incorporate was properly incorporated by reference). Here, the reference in the Purchase Order to the Terms and Conditions is clear, unequivocal, and was "called to the attention" of KEMAR through the use of all capital letters. *See* Exhibit A; *Wolschlager v. Fidelity Nat'l Title Ins.*, 111 Cal.App.4th 784, 791 (App. 6th Dist. 2003). Further, the Terms and Conditions were easily available to KEMAR – all KEMAR had to do was ask Wärtsilä to provide them. *See* Exhibit A. As a result, the arbitration agreement was properly incorporated by reference.

At least one court, presented with claims nearly identical to those here, found that an arbitration agreement was properly incorporated by reference in a preliminary report where an insurance policy containing the arbitration agreement was identified by name and directed the plaintiff to where it could be inspected. *Wolschlager v. Fidelity Nat'l Title Ins.*, 111 Cal.App.4th 784, 791 (App. 6th Dist. 2003). In *Wolschlager*, the issue was whether an insurer's preliminary report sufficiently incorporated the insurance policy's arbitration clause by reference, making it binding on the purchaser. *Id.* Relying on previous California court decisions, the court held that the purchaser of the title issuance policy was bound by the arbitration clause incorporated by reference into the report, even though the purchaser neither saw the policy nor the arbitration clause prior to approving the preliminary report. The court found that it was sufficient that the report referenced the terms and conditions of the policy itself and advised the purchaser where the policy could be obtained. Importantly, the *Wolschlager* court further held that there was "no authority requiring the defendant to specify that the incorporated document contain[ed] an arbitration clause in order to make the incorporation valid." *Id.* In fact, the court went so far as to say that even though the defendant could have "easily attached" the policy rather than making the policy available on request, that would not prevent the formation of a valid agreement to arbitrate. *Id.*

KEMAR's argument that it is not bound to arbitrate because it never saw the Terms and Conditions fails because Wärtsilä's Purchase Order, acknowledged to have been received by KEMAR[6], referenced the Terms and Conditions and advised KEMAR that it could request a copy

---

[6] Exhibit E.

503221084

7

of same from Wärtsilä. Moreover, the fact that the Purchase Order does not specifically indicate that disputes related to the Purchase Order are subject to arbitration, or the fact that Wärtsilä could have attached the Terms and Conditions to the Purchase Order, does not prevent the formation of a valid agreement to arbitrate.

In fact, KEMAR's allegation that the "unsigned Purchase Order does not constitute an enforceable agreement," contradicts existing law. In like contexts, courts have enforced unsigned arbitration agreements. *See Hicks v. Macy's Dep't Stores, Inc.*, No. C 06-02345 CRB (N.D. Cal. Sept. 11, 2006) (citing *Genesco v. T. Kakiuchi Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (finding that "it is well-established that a party may be bound by an agreement to arbitrate even absent a signature."). Neither the FAA nor the California Code of Civil Practice require a signed agreement. Instead, each requires only a written agreement, which Wärtsilä has. *See* 9. U.S.C. §§ 2, 3; Cal. Code Civ. P. § 1281.

Under both New York and California law, the Terms and Conditions were validly incorporated by reference. Therefore, the parties agreement to arbitrate is valid and binding. The issues disputed by KEMAR must be referred to arbitration.

**C. The Relief Requested By KEMAR In Its Complaint Falls Within The Scope Of The Arbitration Agreement**

In its Complaint, KEMAR alleges seven causes of action including breach of contract, breach of the covenant of good faith and fair dealing, common counts, *quantum meruit*, declaratory relief, promissory estoppel and unjust enrichment. The arbitration provision in the Terms and Conditions applies broadly to "[a]ll claims, disputed and any other matters in question between Buyer and Seller arising out of or relating to this Purchase Order or the breach thereof . . ." Thus, by its agreed-to and express terms, the arbitration agreement applies to all of KEMAR's claims. Indeed, each alleged claim in KEMAR's Complaint references the March 16, 2009 Purchase Order, or references payment stemming from the March 16, 2009 Purchase Order. *See* Plaintiff's Complaint, document 1. KEMAR's claims against Wärtsilä clearly arise out of and are connected to the Purchase Order at issue in this dispute. KEMAR is therefore required to arbitrate these claims.

503221084

8

II. **THE LAWSUIT SHOULD BE STAYED PENDING ARBITRATION PURSUANT TO 9 U.S.C. § 3**

Under the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3.

9 U.S.C. § 3 calls for this Court to stay this action because a valid agreement to arbitrate exists between the parties, KEMAR's claims fall within the scope of that agreement, and because Wärtsilä is not otherwise in default in proceeding with such arbitration. *Geographic Expeditions Inc. v. Estate of Jason Lhotka*, No. C 08-04624 SI, 2010 WL 3516116, * 3 (N.D. Cal. Sept. 8, 2010); *Irving v. Ebix, Inc.*, No. 10-CV-762 JLS (BLM), 2010 WL 3168429, *11 (S.D. Cal. Aug. 10, 2010).

## CONCLUSION

Wärtsilä North America, Inc. respectfully requests that the Court grant its Motion to Compel Arbitration, order that all claims presented by Koffler Electrical Mechanical Apparatus Repair, Inc. be submitted to arbitration in accordance with Item 17 of Wärtsilä's 2007 Terms and Conditions, order that this cause shall be stayed pending arbitration pursuant to 9 U.S.C. § 3, and grant Wärtsilä such other and further relief, in law or in equity, to which it is justly entitled.

Respectfully submitted,

Dated: January 27, 2011

BAKER & HOSTETLER, LLP
MICHAEL R. MATTHIAS

s/Michael R. Matthias
Michael R. Matthias
Attorneys for Defendant
WÄRTSILÄ NORTH AMERICA

503221084

9

# PROOF OF SERVICE

*Koffler Electrical Mechanical Apparatus Repair, Inc. v. Wärtsilä North America, Inc.*
Case No. 3:11cv00052 EMC

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF LOS ANGELES    )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 12100 Wilshire Boulevard, 15th Floor, Los Angeles, California 90025. On January 27, 2011, I served the foregoing document described as **DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND FOR STAY OF ACTION; POINTS AND AUTHORITIES IN SUPPORT THEREOF** upon the following:

| | |
|---|---|
| Gregory M. Fox<br>Richard W. Quinn<br>Bertrand, Fox & Elliot<br>The Waterfront Building<br>2749 Hyde Street<br>San Francisco, CA 94109<br>Tel: 415.353.0999<br>Fax: 415.353.0990<br>*Attorneys for Plaintiff* | Kevin W. Finck<br>Finck & Dadras LLP<br>100 Spear Street, Suite 700<br>San Franciso, CA 94105<br>Tel: 415.296.9100<br>Fax: 415.296.6446<br>*Attorney for* |

[ ] BY FAX: I served the foregoing document on the interested parties in this action by transmitting the above-referenced document to the above-mentioned at the following telecopy number.

[ ] BY MAIL: I placed true copies of the foregoing document in sealed envelopes addressed as stated on the above/attached service list. I placed such envelope, with postage thereon fully prepaid, for collection and mailing at 12100 Wilshire Boulevard, 15th Floor, Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice the mail would be deposited with the U. S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X] **BY ELECTRONIC SERVICE/PACER-ECF: I caused the foregoing document to be filed and served via PACER/ECF upon the above-addressed party.**

I declare under penalty pursuant to the laws of the United States that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **January 27, 2011**, in Los Angeles, California.

Lisa M. Lovullo

503231347