UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOFFLER ELECTRICAL MECHANICAL APPARATUS REPAIR, INC., <br><br> Plaintiff, <br><br> v. <br><br> WÄRTSILÄ NORTH AMERICA, INC., <br><br> Defendant. <br> _____/ | No. C-11-0052 EMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND FOR STAY OF ACTION** <br><br> **(Docket No. 6)** |

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Koffler Electrical Mechanical Apparatus Repair, Inc. ("KEMAR") brought this action against Defendant Wärtsilä. KEMAR alleges that Wärtsilä has refused to pay KEMAR for repairs made to an AVK 10,550 AVK electric generator. In or about November 2008, KEMAR inspected the generator and provided an offer to repair it. Based on KEMAR's offer, and upon request by KEMAR, Wärtsilä issued its purchase order to KEMAR in March 2009. A the bottom of page 3 of the purchase order the following language in capital letters appeared:

> ALL SUPPLIES OF GOOD AND/OR SERVICES ARE SUBJECT TO THE WÄRTSILÄ NORTH AMERICA, INC. GENERAL TERMS AND CONDITIONS USA – PURCHASE ORDERS (2007). THE COMPANY WILL SUPPLY COPIES OF THE GENERAL TERMS AND CONDITIONS UPON REQUEST.

The General Terms and Conditions contained the following dispute resolution provision requiring the parties to arbitrate claims and disputes:

> 17. DISPUTES  All claims disputes and any other matters in question between Buyer and Seller arising out of or relating to this Purchase Order or the breach thereof shall be referred to arbitration for

1
2
3
4
5
6

>resolution in accordance with the applicable rules of the American Arbitration Association.  The situs of any such proceeding shall be Houston, Texas; Seller shall proceed with the work and maintain its progress during any dispute or arbitration.  Nothing contained in this Purchase Order shall preclude Buyer from bringing any legal suit, action or other enforcement proceedings against the Seller in the courts of any jurisdiction where the Seller or any of its property or assets may be found or located; pursuant to and to the extent permitted by the local laws of such jurisdiction, the Seller hereby irrevocably submits to the jurisdiction of any such court.

7 The day after the purchase order referencing the General Terms and Conditions containing the
8 arbitration provision was sent to it, KEMAR acknowledged receipt of the purchase order.
9       The General Terms and Conditions were not attached to the purchase order and were not
10 provided to KEMAR at any time until 2010, after a dispute arose regarding repairs to the generator
11 and payment therefor.  KEMAR claims it had no knowledge of the arbitration provision and that it
12 was never raised by Wärtsilä until well after Wärtsilä refused to pay KEMAR for the repairs.
13 Wärtsilä's General Terms and Conditions contained additional provisions including:  (1) a choice of
14 law provision requiring the application of New York Law (Par. 16); and (b) a provision requiring
15 any arbitration brought by KEMAR be brought in Houston, Texas while permitting Wärtsilä to
16 initiate a legal proceeding in court in any jurisdiction where KEMAR is located or has assets (Par.
17 17).
18       After KEMAR had performed the work on the generator, in June 2010, a dispute arose
19 wherein Wärtsilä informed KEMAR that it believed that KEMAR was responsible for delays and
20 extra expenses in repairing the generator.  KEMAR asserts it substantially completed the repairs to
21 the generator on September 15, 2010.  Wärtsilä refused and continues to refuse to pay KEMAR for
22 the repairs.
23       On or about December 15, 2010, Wärtsilä filed an arbitration demand with the American
24 Arbitration Association in Houston, Texas claiming that pursuant to the General Terms and
25 Conditions referenced in the March 16, 2009 purchase order, the dispute must be arbitrated in
26 Houston, Texas.  KEMAR contacted the American Arbitration Association and indicated it will not
27 submit to its jurisdiction because there is no agreement to arbitrate and the purported arbitration
28

clause is unconscionable and illegal under California and New York law.  On January 5, 2011, KEMAR filed the complaint herein against Wärtsilä.  Wärtislä has moved to compel arbitration.

## II. DISCUSSION

Federal law mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the avoidance of any contract.  9 U.S.C. § 2.  In deciding whether a dispute is arbitrable, a court must answer two questions:  (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue.  *Chiron Corporation v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999).  If a party seeking arbitration establishes these two factors, the court must compel arbitration.  9 U.S.C. § 4; *Chiron*, 207 F.3d at 1130.

Any doubt concerning arbitrability under the Federal Arbitration Act should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself, or an allegation of waiver, delay, or other similar defense to arbitrability.  *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756-57 (9th Cir. 1988).  As shown below, the parties' agreement to arbitrate is binding, and KEMAR's claims fall within the broad scope of the arbitration clause.

The parties do not dispute that state contract law governs whether an agreement to arbitrate is valid and enforceable.  *See Doctors Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  The parties also agree that the court must determine whether there is an agreement to arbitrate as well as the enforceability of such agreement.  *See Baldeo v. Darden Restaurants, Inc.*, 2005 WL 44703 (E.D.N.Y. 2005) at *3; *Wolschlager v Fidelity National Title Insurance Company*, 111 Cal. App. 4th 784, 788-89 (2003).

Generally, questions of state contract law must be decided under the law of the state selected by the parties' agreement.  *Motorola Credit Corporation v. Uzan*, 388 F.3d 39, 51 (2nd Cir. 2004).  Wärtsilä relies on the choice of law provision contained in its purchase order which specifies that New York state law applies.  KEMAR advances arguments both under California and New York law.  At the hearing, neither side disputed that California and New York law do not differ materially

for purposes of the instant motion.  The Court addresses the instant dispute under both New York and California law.

A.       Enforceability of the Arbitration Clause

The critical question is whether the parties agreed to arbitrate the instant dispute where the document constituting the primary contract (*i.e.* the purchase order) did not expressly provide for arbitration but incorporated another document containing such provision, and where it is alleged that KEMAR was unaware of the arbitration provision.

1.       California Law

In *Shaw v. The Regents of the University of California*, 58 Cal. App. 4th 44, 54 (1997), the court articulated the test for determining when a contract effectively incorporates by reference the terms of an extrinsic document so as to be binding on the contracting parties.

> A contract may validly include the provisions of a document not physically apart from the basic contract . . . 'it is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document.  But each case must turn on its facts.  For the terms of another document to be incorporated into the document executed by the parties, the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.'

54 Cal. App. 4th at 54 (citations omitted).  The court further stated that "[t]he contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'"  *Id.* (citations omitted).

The court in *Wolschlager*, *supra*, 111 Cal. App. 4th 784 applied this test in holding that an arbitration clause in a title insurance policy was properly incorporated by reference into the preliminary title report and was thus binding upon the insured even though the insured had not seen the policy or the arbitration clause prior to approving the preliminary title report.  In that case, the insured received a preliminary report from the defendant which he read and approved.  Included in the preliminary report was an "Exhibit A" which contained selected portions of the proposed policy to be issued.  However, the policy itself was not attached to the preliminary report.  The selected policy provisions in Exhibit A did not include or refer to any arbitration provision.  Nor was any

mention of arbitration made in the preliminary report itself. However, the first page of the preliminary report stated, "copies of the policy forms should be read. They are available from the office which issued this Report." *Id.* at 181-82. As framed by the court, the critical question is "whether the arbitration clause was sufficiently incorporated into the preliminary report by reference to bind the plaintiff contractually." *Id.* at 184. The court held that it did. In so holding, the court distinguished *Chan v. Drexel Burnham Lambert, Incorporated*, 178 Cal. App. 3d 632 (1986).

In *Chan*, the court found that the arbitration provisions of the rules of stock trading organizations were not sufficiently incorporated by reference where the contract did not clearly refer to and identify the incorporated document. As the *Wolschlager* court explained, "because the application did not specifically identify the rule where the arbitration clause was located by name, the court [in *Chan*] found the reference amorphous, and held that because the contract did not guide the reader to the incorporated document, it failed to '*clearly and unequivocally*' refer to the incorporated document. 111 Cal. App. 4th at 790-91 (emphasis in original).

In contrast, the preliminary report in *Wolschlager* referred to the incorporated title insurance policy a number of times. Unlike *Chan*, "the Preliminary Report specifically identifies the document incorporated as the policy, lists the form which is contemplated and tells the recipient where they can find the policy. This incorporation was both clear and unequivocal." *Id.* at 184-85. Although the insured did not actually know about the arbitration clause, "the Policy with the clause was easily available to him. The preliminary report identified the Policy by name and directed the plaintiff to where he could inspect it. Nothing further was needed to bind the plaintiff." *Id.* at 185. *Wolschlager* rejected the argument that the plaintiff was entitled to some kind of specific warning about arbitration. "There is no authority requiring the defendant to specify that the incorporated document contains an arbitration clause in order to make the incorporation valid. All that is required is that the incorporation be clear and unequivocal and that the plaintiff can easily locate the incorporated document." *Id.*

Similarly, in *Marsk-Sealand v. Eurocargo Express, LLC*, 2004 WL 1950372 (C.D. Cal. 2004), the defendant shipped containers on plaintiff's ships pursuant to a written service agreement. A billing dispute arose between the parties. The plaintiff asserted a general lien on containers it was

transporting for defendant. At issue was whether a general lien provision contained in plaintiff's tariff was properly incorporated by reference into the service agreement. Relying on *Shaw v. The Regents of the University of California*, the court in *Marsk-Sealand* noted that "California courts have generally approved such incorporation so long as 'the reference [is] clear and unequivocal' and 'the terms of the incorporated document are known or easily available to the contracting parties.'" (citations omitted). *Id.* at *6. The court held that the service agreement "clearly identified by title each document that it purported to incorporate," and that these documents were either known or available to defendant as they were all properly filed. *Id.*

The Court finds *Wolschlager* and *Maersk-Sealand* on point. In the case at bar, Wärtsilä's purchase agreement explicitly incorporated by reference Wärtsilä's General Terms and Conditions. The sentences on page 3 of the purchase order makes that incorporation explicit and specific. They are capitalized. Reference to the General Terms and Conditions was "clear and unequivocal." *Shaw*, 54 Cal. App. 4th at 54; *Wolschlager*, 111 Cal. App. 4th at 790. Furthermore, the General Terms and Conditions was "easily available." *Id.* The purchase order stated that "THE COMPANY WILL SUPPLY COPIES OF THE GENERAL TERMS AND CONDITIONS UPON REQUEST." KEMAR does not contend that the General Terms and Conditions was not available upon request. As *Wolschlager* makes clear, the fact that KEMAR was not aware of the arbitration clause does not prevent its enforceability so long as the General Terms and Conditions were "easily available" to it. 111 Cal. App. 4th at 791. Moreover, by agreeing to the purchase order which effectively incorporated the General Terms and Conditions, KEMAR consented to it. As the court in *Shaw* made clear, the relevant intent of the parties in interpreting a contract is "objective," not subjective. *Shaw*, 58 Cal. App. 4th at 54-55 (it is "the objective intent as evidence by the words of the instrument, not the party's subjective intent").

KEMAR argues that *Wolschlager* is distinguishable because the title insurance policy was the very subject of the transaction therein, and was thus something one would expect the insured to read. In contrast, KEMAR had less reason to read the General Terms and Conditions of Wärtsilä. Whether this is true or not, the test of incorporation set forth in *Shaw* and applied in *Wolschlager* and *Maersk-Sealand* draws no distinctions between incorporated documents one would expect the

contracting party to read and those documents which are not as likely to be read.  Instead, the test turns on whether the incorporation by reference is "clear and unequivocal."  The criteria of *Shaw* are met in the case at bar.

      2.    <u>New York Law</u>

New York public policy favors arbitration.  *Aerotech Worldtrade Ltd. v. Excalibur Systems, Inc.*, 263 A.D. 2d 609, 654 N.Y.S. 2d 386 (1997).  Similar to California law, an agreement to arbitrate must be "clear and unambiguous."  *Id.* at 611.  An agreement to arbitrate can be incorporated by reference where such reference clearly shows an intent to arbitrate.  *Id.*

The Court finds *Level Export Corporation v. Wolz, Aiken & Co.*, 305 N.Y. 82, 111 N.E. 2d 218 (1953), persuasive.  In *Level Export Corporation* a buyer agreed to buy fabric from the seller. The sales contracts contained the following paragraph:

> This SalesNote is subject to the provisions of the STANDARD COTTON TEXTILE SALESNOTE, which, by this reference, is incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller.  No variation therefrom shall be valid unless accepted in writing.

*Id.* at 84.  The tenth subdivision of the Standard Cotton Textile Salesnote contained an arbitration provision.  The buyer objected to arbitration, asserting that it had not been informed that the provisions of the Standard Cotton Textile Salesnote contained an arbitration provision and that it had not seen the rules or ever been provided with a copy thereof.  The court rejected this argument.  It found that the sales contracts had expressly incorporated the Standard Cotton Textiles Salesnote into the sales agreement.  The court observed, "difficult it would be to find words more clearly to express the contractual intent of the parties."  *Id.* at 86.  Based on the "plain language" of the agreements, the court found that the arbitration provision was properly incorporated by reference into the sales contracts.  *Id.* at 87.  The fact that the buyer was ignorant of the arbitration provision contained in the Standard Cotton Textile Salesnote did not relieve the buyer of its obligations to arbitrate. "Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contractual obligations.  He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury to his understanding of its terms."

*Id.*, quoting *Metzger v. Aetna Insurance Company*, 227 N.Y. 411, 416.  *See Baldeo*, 2005 WL 44703 at *4 ("failure to read a document incorporated by reference into a valid arbitration agreement does not generally allow an employee to avoid the terms set forth in the incorporated document"); *Gold v. Deutsche Aktiengesellschaft*, 365 F. 3d 144, 149-50 (2nd Cir. 2004) (employee bound by arbitration clause contained in a document he had not read but which was incorporated by reference because the arbitration clause was "broad and plain" and put the employee on notice); *Liberty Management & Const. Ltd. v. Fifth Avenue & Sixty-Sixth Street Corp.*, 208 A.D. 2d 73, 620 N.Y.S. 2d 827 (1995) (construction contractor bound by arbitration clause contained in General Conditions incorporated by reference into the main construction contract).

As noted above, the incorporation of the General Terms and Conditions which contained the arbitration clause was "clear and unambiguous."  *Aerotech Worldtrade Ltd.*, 236 A.D. 2d at 611.  KEMAR's ignorance of the provision did not defeat its incorporation into the purchase order.  *Level Export Corporation*, 305 N.Y. at 87.

B.     Unconscionability

KEMAR contends that even if the arbitration clause was properly incorporated into the purchase order, it is unenforceable because it is unconscionable.  KEMAR contends that the arbitration clause was procedurally unconscionable because it was not included or mentioned at any point during the parties' negotiations about the work to be done.  It argues that there was "no evidence that the terms and conditions were negotiable, and it was thus a contract of adhesion."  KEMAR also argues that the arbitration clause is substantively unconscionable because it is one-sided:  while the provision requires KEMAR to arbitrate disputes in Houston, Texas, it provides Wärtsilä the freedom to bring a legal action in any jurisdiction where KEMAR has property or assets.  This lack of mutuality, according to KEMAR, renders the arbitration clause unconscionable.

1.     California Law

"Under California law, unconscionability has both procedural and substantive elements, and both elements must be present for a court to invalidate a contract on the ground of unconscionability."  *Baker v. Osborne Developing Corporation*, 159 Cal. App. 4th 884, 894 (2008).  There is a sliding scale relative to both components:  "the more substantively oppressive the contract

term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000).

The procedural element of unconscionability involves "oppression and surprise." *Baker*, 159 Cal. App. 4th at 894. Oppression occurs when the parties have unequal bargaining power and the party resisting the term lacks meaningful choice. *Id.* Surprise may arise "when challenged terms are hidden in a prolix printed form drafted by a party in a superior bargaining position." *Id.*

In this case, the Court finds there was no procedural unconscionability. This was a transaction between two sophisticated parties, and there was no indication of unequal bargaining power. Nor was there any indication that KEMAR could not have negotiated the terms of the purchase order and the incorporated General Terms and Conditions. *See Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (2010) (minimal procedural unconscionability where plaintiff was not an uneducated, low wage employee without the ability to understand arbitration agreement, but rather a highly educated attorney). Although Wärtsilä did not alert KEMAR to the arbitration clause, the purchase order clearly incorporated by reference the General Terms and Conditions, and there was no showing that the General Terms and Conditions were not readily available. The incorporation was not hidden but highlighted in capitalized letters. This case stands in contrast to *Baker*, relied upon by KEMAR, where the arbitration agreement was: (1) imposed upon homebuyers through misleading documents presented to the homebuyers a day before scheduled close of escrow, (2) contained in documents not presented to the buyers and not available from the escrow officers, and (3) apparently a non-negotiable contract of adhesion. *Baker*, 159 Cal. App. 4th at 894-95.

On the other hand, the lack of mutuality of the arbitration provision herein which affords Wärtsilä but not KEMAR the right to go to court and avoid arbitration, is problematic. The "paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004). *See Pardee Construction Company v. Superior Court*, 100 Cal. App. 4th 1081, 1092 (2002) (contract term unconscionable where provisions are for one party's benefit only); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1174 (9th Cir. 2003).

Even assuming, however, the one-sided nature of the arbitration provision in Wärtsilä's General Terms and Conditions renders it unconscionable, the offending portion may be severed. The parties so agreed. Item 21 of the General Terms and Conditions states that:

> If any portion of this purchase order is held invalid, the parties are that such invalidity shall not affect the validity of the remaining portions of this purchase order, and the parties further agree to substitute for the invalid portion a valid provision that most closely approximates the economic effect and intent of the invalid provision.

Moreover, the Court may sever an invalid portion of an agreement where "only one provision of the agreement is found to be unconscionable and that provision can be easily severed without affecting the remainder of the agreement." *Dotson*, 181 Cal. App. 4th at 985. Severance is permissible where the unconscionable provision is "easily stricken with no need for the Court to augment or reform the Agreement." *Martin v. Ricoh Americas Corporation*, 2009 WL 1578716 (N.D. Cal. 2009) at *6. Furthermore, severance is appropriate where there is no indication that there has been a systematic effort to impose arbitration, not simply as an alternative to litigation, but as an inferior forum that works to the imposing party's advantage. *Armendariz*, 24 Cal. 4th at 124.

In the case at bar, the objectionable provision which renders the arbitration clause unconscionable is contained in a single sentence – the last sentence of Section 17 of the General Terms and Conditions which provides: "nothing contained in this purchase order shall preclude from Buyer from bringing any legal suit, action or other enforcement proceedings against the Seller in the courts of any jurisdiction where the Seller or any of its property or assets may be found or located: pursuant to and to the extent permitted by the local laws of such jurisdiction, the Seller hereby irrevocably submits to the jurisdiction of any such court." That entire sentence may be stricken without requiring the Court to reform the language of the contract. Once stricken, the arbitration clause is completely cured of its lack of mutuality and hence any substantive unconscionability. There is no indication here of such a systematic effort to impose an inferior forum upon KEMAR. Severance is proper.

2. <u>New York Law</u>

The same result obtains under New York law. Under New York law, a determination of unconscionability generally requires both procedural and substantive unconscionability. *Ciago v.*

*Ameriquest Mortgage Company*, 295 F. Supp. 2d 324, 328 (S.D.N.Y. 2003). The New York courts apply the same "sliding scale" test of procedural and substantive unconscionability as applied by the California courts. *See New York v. Wolowitz*, 96 A.D. 2d 47, 68, 468 N.Y.S. 2d 131 (1983).

The test for procedural unconscionability is whether "a party lacked a meaningful choice in deciding whether to sign the contract." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002). The Court looks to evidence of high pressure or deceptive tactics, the use of fine print and unequal bargaining power between the parties. *Id.*

As found above, none of these procedural factors exist in the instant case. This was a negotiated transaction between two sophisticated parties. There was no evidence of high pressure or deceptive tactics or unequal bargaining power between KEMAR and Wärtsilä. Furthermore, as noted above, rather than fine print, the General Terms and Conditions were incorporated via capitalized letters.

As to substantive unconscionability, under New York law such unconscionability obtains where the terms are unreasonably favorable to one party. *Id.* A lack of mutuality in an arbitration clause is a factor in evaluating unconscionability. *Hanover Insurance Company v. Losquadro*, 600 N.Y.S. 2d 419, 423 (1993). While such substantive unconscionability arguably obtains here given the one-sided nature of the arbitration provision in Wärtsilä's General Terms and Conditions, the Court may sever the invalid provision rather than void the entire arbitration agreement. *See Brady v. Williams Capital Group, L.P.*, 64 A.D. 3d 127, 137-38, 878 N.Y.S. 2d 693 (2009). It chooses to do so.

### III.   CONCLUSION

The Court concludes that under both California and New York law, the arbitration clause contained in Wärtsilä's General Terms and Conditions were properly incorporated into the purchase order which formed the contract between the parties. Because of the one-sided nature of the arbitration provision, it is unconscionable. However, the Court can and does sever the last sentence of Section 17 of the General Terms and Conditions, thus curing the arbitration clause of its lack of mutuality.

     Accordingly, having severed the last sentence of Section 17 of the General Terms and Conditions, the Court finds the remaining provisions of the arbitration provision binding on both parties. The subject of the dispute is well within the scope of the arbitration clause. Thus, the Court **GRANTS** Wärtsilä's motion to compel arbitration. All further proceedings before this Court are stayed pending completion of that arbitration.

     This order disposes of Docket No. 6.

     IT IS SO ORDERED.

Dated: March 24, 2011

                                                 _____
                                               EDWARD M. CHEN
                                               United States Magistrate Judge